LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com
lglancy@glancylaw.com
rprongay@glancylaw.com

*Attorneys for Plaintiff*
*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID C. SUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMIRA NATURE FOODS LTD., KARAN A. CHANANA, BRUCE C. WACHA, RITESH SUNEJA, AND ASHISH PODDAR,<br>Defendants. | Case No.:<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>DEMAND FOR JURY TRIAL</u> |

David C. Sund ("Plaintiff"), on behalf of himself and all other persons similarly situated, by his undersigned attorneys, for his complaint against Amira Nature Foods, Ltd., ("Amira", or the "Company"), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendant's public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Amira securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of Amira pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's Initial Public Offering ("IPO") or purchased or otherwise acquired common stock of Amira during the period between September 27, 2012 and February 9, 2015, inclusively ("Class Period"). Plaintiff seeks

to recover damages caused by Defendants' violations of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act").

2. Throughout the Class Period, the Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose related party transactions and overstating revenues making the financial statements false.

3. When the market learned of the overstated revenues and related party transactions, the Company's stock price plunged, damaging investors.

## JURISDICTION AND VENUE

4. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5) and under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, and the rules and regulations of the SEC promulgated thereunder.

5. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa), Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)), and 28 U.S.C. § 1331.

6. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C., Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and § 1391(b) as Amira conducts business in this District.

7. In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the NYSE

## PARTIES

8. Plaintiff, as set forth in the attached PSLRA certification, purchased Amira securities at artificially inflated prices during the Class Period and has been damaged thereby.

9. Defendant Amira is a British Virgin Islands Corporation with its principal executive offices located in Dubai, United Arab Emirates. Amira has an office in this District at One Park Plaza, Suite 600, Irvine, California, 92614. Amira processes, markets, and sells rice and other food products. Its predominate product is Indian basmati rice. Amira shares trade on NYSE under the ticker "ANFI."

10. Defendant Karan A. Chanana ("Chanana") was, at all relevant times, Chief Executive Officer ("CEO") and Chairman of the Board of Directors of Amira.

11. Defendant Bruce C. Wacha ("Wacha") became Chief Financial Officer ("CFO") of Amira on June 2, 2014 throughout the end of the Class Period. He is also Principal Accounting Officer, and Executive Director of Amira.

12. Defendant Ritesh Suneja ("Suneja") was CFO of Amira from the beginning of the Class Period until resignation in November 20, 2012.

13. Defendant Ashish Poddar ("Poddar") was CFO of Amira from November 11, 2012 until resignation on May 1, 2014.

14. Collectively, Defendants Chanana, Wacha, Suneja, and Poddar are the "Individual Defendants".

15. Collectively, Amira and the Individual Defendants are the "Amira Defendants."

16. During the Class Period, the Individual Defendants and Amira, were privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections. Because of possession of such information, the Defendants knew or recklessly disregarded the fact that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

17. Defendants had access to the adverse undisclosed information about the Company's business, operations, related party transactions, financial statements, markets

and present and future business prospects via access to internal corporate documents and via reports and other information provided in connection therewith.

18. Throughout the Class Period, the Defendants were able to control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. The Defendants had access to the documentation of filings alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, the Defendants are responsible for the accuracy of the public reports and press releases detailed herein, and are therefore primarily liable for the representations contained therein.

## DEFENDANTS' WRONGDOING

### Background

19. Amira is in the food industry with its primary product is basmati rice.

20. Basmati rice export sales are overseen by the Agricultural and Processed Food Products Export Development Authority ("APEDA"), a governing body overseeing agricultural exports in India.

21. The Class Period begins on September 27, 2012 when the Company filed its final Registration Statement with the SEC on Form F-1/A. The Registration Statement was signed by Defendants Chanana and Suneja.

22. On October 11, 2012 the Company filed its Prospectus on Form 424B4 with the SEC and the IPO was conducted the same day.

23. The Registration Statement and Prospectus are collectively referred to as the "Offering Documents."

24. On October 11, 2012, 9,000,000 ordinary shares of Amira securities were sold during the IPO at $10 per share. The Company amassed $90,000,000 in its IPO.

25. The Offering Documents were false and misleading because they failed to adequately detail related party transactions.

26. On June 13, 2013, Amira filed its annual report for the Company's fiscal year ending March 31, 2013, on Form 20-F (the 2013 Form 20-F"). The 2013 Form 20-F was signed by Defendants Chanana and Poddar.

27. The 2013 Form 20-F was false and misleading because the revenues included in the financial statements were overstated and inaccurate. The 2013 Form 20-F stated that Amira generated $224.8 million in revenue from exported goods.

28. Additionally, the 2013 Form 20-F was false and misleading because it failed to properly disclose related party transactions.

29. On July 28, 2014, Amira filed its annual report for the Company's fiscal year ending March 31, 2014, on Form 20-F ("2014 Form 20-F") filed with the SEC. The 2014 Form 20-F was signed by Defendants Chanana and Wacha.

30. The 2014 Form 20-F was false and misleading because the revenues and financial statements included were overstated and inaccurate. The 2014 Form 20-F stated that Amira generated $323.2 million in revenue of export sales.

31. Additionally, the 2014 Form 20-F was false and misleading because it failed to adequately disclose related party transactions.

32. On January 28, 2015, Amira filed a Form 6-K (the “Form 6-K”) with the SEC discussing the acquisition of Amira Enterprises Private Limited (“Amira Enterprises”). The 6-K states in relevant part:

> [Amira] will apply $30.0 million of the net proceeds of the Notes as cash consideration to acquire Amira Enterprises Private Limited (the “Amira Enterprises Share Purchase”), an Indian company (“Amira Enterprises”), an entity which owns approximately 86 acres of land in Karnal, India adjacent to 48.2 acres of land that we have previously purchased and on which we have begun to construct our new processing and milling facility, including facilities for drying and storing rice paddy and Basmati rice and for storing and distributing Basmati rice and other products. Members of the family of our Chairman, Karan A. Chanana, currently own Amira Enterprises and will receive the proceeds of the sale to Amira Mauritius.

## <u>THE TRUTH MATERIALIZES CAUSING PLAINTIFF’S LOSSES</u>

33. On February 9, 2015, a third-party analyst firm, Prescience Point Research Group (“PPRG”), issued a report (the “Report”) highlighting the overstatement of revenues and the material related party transactions.

## Inaccurate Revenues and Financial Statements

34. The Report indicates that APEDA lists Amira as the fourteenth largest exporter of basmati rice in India. However according to PPRG, "Had Amira truly generated the revenue from Basmati exports it reported to US investors, it would have been the 4th and 5th largest exporter of basmati rice in FY'13 and FY'14, respectively..."

35. According to the Report, the APEDA records indicate that Amira exported around $69 million of basmati rice in the fiscal year ending March 31, 2013 and only around $87 million of basmati rice in the fiscal year ending March 31, 2014. Therefore PPRG summarized:

- Amira overstated its Basmati export sales by ~145% in FY'13 and ~117% in FY'14
- Amira overstated its Basmati exports by ~$100m in FY'13 and ~$102m in FY'14, meaning that ~24% and ~18.7% of ANFI total sales in FY'13 and FY'14, respectively, were fabricated

(emphasis in the original)

36. The Report compares Amira's financial statements with three other publically traded basmati rice companies: KRBL, LT Overseas, and Kohinoor Foods. According to PPRG, "Compared to Amira, each of these companies has a larger

processing capacity, greater brand recognition (both in India and international markets), and significantly greater financial and operational resources."

37. PPRG compares Amira to these other three companies noting that what Amira is reporting to its investors is impossible to connect with reality. The Report states:

> The results are astonishing. **Amira is generating the most revenue on the least processing capacity of any of its peers**. ANFI sales exceed KRBL's, yet Amira has little more than a tenth of KRBL's processing capacity. Of all comps, KRBL has the most processing capacity, and it is widely known as the largest branded Basmati company in India. Furthermore, **Amira reports the highest gross margin in the peer group**. Amira's gross margin is higher than KRBL's. We would think these data indicate ANFI has better pricing power, greater operating efficiency, and a higher proportion of Basmati and branded sales vs total sales. But, ANFI possesses none of these advantages.
>
> But something isn't adding up… It's a really bad sign when a company's reported financials would make it among the largest in its industry, yet the competition doesn't know much – or anything – about it. Management at KRBL and LT Foods told us they have not been exposed to ANFI through industry circles, and that they haven't seen much in terms of brand visibility from Amira. Both companies expressed doubt that Amira is the size it claims. In contrast, KRBL and LT Foods are quite familiar with one another, and with Kohinoor Foods.
>
> (emphasis in the original)

38. According to PPRG, "Basmati rice has to be stored for almost 12 months before it can be sold. Thus for their export requirement, they rely heavily on bank finance and investors. If the exporters do not inflate their turnover, the financing that is provided may not be adequate due to vagaries of the market; as a result, the exporters

indulge in the malpractice of inflating their turnover." PPRG spoke to a former CFO of Amira ("CFO1") who agreed "that is very much true" that Amira inflates turnover of rice by 25-30% to keep its financing.

**Related Party Transactions**

39. Statement of Financial Accounting Standards ("SFAS") No. 57 and No. 850 provide that a public company's "[f]inancial statements shall include disclosures of material related party transactions." SFAS No. 57 ¶ 2; 850-10-50-1. "Related party transactions" include those between "an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its "affiliates." SFAS No. 57 ¶ 1; 850-10-05-3. "Affiliate" includes any company that is under common control or management with the public company. SFAS No. 57 ¶ 24(a, b); 850-10-20.

40. After close of market on April 2, 2013 an article entitled "Amira Nature Foods – Underfunded And Overvalued" was published on seekingalpha.com. The article details how Amira is not adequately funded and involved with many related party transactions. The article discusses Amira's sole representative of Amira Foods in the Middle East, Karam Enterprises, which is operated by Defendant Chanara's father, Anil Chanana. The article states in relevant part:

> One particularly troubling related party relationship worth detailing is with a company called Karam Enterprises. Karam Enterprises, according to their website, is the sole representative of Amira Foods for the Middle East

(Amira's largest market outside of India) and some African countries. The contact phone number for Karam is 9714-235- 1755 which is the same number Amira uses for their Dubai headquarters. The whois data for Karam's website also shows that Amira Foods is the registrant. Additionally, the managing director of Karam is Anil Chanana, who is the father of Karan Chanana, the current CEO of ANFI. According to the 2006 annual report, Anil had previously been the managing director of Amira prior to his son taking over, before resigning from Amira for personal reasons. Amira had been a 5% owner of Karam, with Anil owning 34%, and Karan owning 24%, but Amira appears to have sold their 5% Karam ownership stake in fiscal 2007. Additionally, as of 9/27/2012, Karam Industries, with Anil signing as representative, owned 1,113,134 shares of Amira India. This is a disturbing conflict of interest, and a nightmare for maintaining proper internal controls.

41. On this news and release of the article, Amira’s stock fell $0.46 or about 6% closing at $7.14 on April 3, 2013. The stock continued to fall the remaining days of that week closing at $6.50 at the end of the week on April 5, 2013, a fall of almost 20% from the publication of the article.

42. The 2013 Form 20-F and the 2014 Form 20-F were therefore not in compliance with Generally Acceptable Accounting Principles (“GAAP”).

43. Financial Statements not in compliance with GAAP are presumed to be misleading. SEC Regulation S-X, 17 C.F.R. § 210.4-01. Therefore, the Company’s 2013 and 2014 Forms 20-F were misleading.

44. The Report raises some important questions regarding Amira’s clients and suppliers. The Report states that PPRG’s research indicates:

1. ANFI’s largest customer is an undisclosed related party, meaning it is ANFI

2. One of ANFI's largest suppliers, which a key employee purports also to be its "National distributor," is an undisclosed related party

3. As a part of the current debt offering, ANFI is planning to transfer $30m of the $225m raised to Chanana in exchange for vastly over-valued real estate residing on the balance sheet of a related party

4. There are over a dozen undisclosed related party entities situated inside ANFI headquarters, some of which are in the same business as ANFI

45. The Report also uncovers additional related parties that Amira did not disclose. The Report states in relevant part:

> Motivated by evidence that ANFI is not fully disclosing related party transactions, we became suspicious that additional related parties may exist. Further investigation revealed scores of undisclosed related parties that either,
> 1. List ANFI's corporate or registered address as their own
> 2. List an @amirafoods.com email address for official contact
> 3. Are directed by Karan Chanana and/or his wife Radhika
>
> By our count, we identified 11 related parties that have never been mentioned in ANFI's SEC filings, on the company's website, or in any public forum. Most meet all of the above criteria –> they are operated from <u>within Amira's headquarters, use Amira email addresses, and are directed by Karan Chanana or his wife.</u>
>
> We have found that at least a couple of these entities are in the business of distributing rice, including Basmati rice, and other commodities. They are in the same business as ANFI, and operating from the same address.
>
> - These two entities are Bharat Food Traders and Amira Enterprises Ltd.

(emphasis in the original)

46. Both the 2013 Form 20-F and the 2014 Form 20-F state that "Since the IPO, we have not entered into any purchase or sale transactions with any related party." This is a false statement because Amira has continued to engage in related party transactions since the IPO. The Report discloses a conversation PPRG had with a former

Amira director who served on the audit and corporate governance committees. The former director stated that:

> 1. Karam was indeed Amira's largest customer (as it once claimed on its website), and
>
> 2. Amira was still transacting with Karam through the date of his resignation at the end of Q3'2013.

47. Therefore, these related party transactions – disclosed or undisclosed – were being conducted after the IPO.

48. The Form 6-K filed on January 28, 2015 was false and misleading because it did not disclose the true ownership and operations of Amira Enterprises, the company that Amira was going to acquire to get its plot of land. According to the Report, "most of the $30m will go directly to Karan Chanana who owns Amira Enterprises through shell companies he set up that are owned by companies he owns."

49. The Report further details its research that:

> 1. Chanana purchased this 86 acre plot in 2009-2010 with the purpose of developing commercial real estate, but depressed real estate prices in the area have made this an economically unviable possibility. This land is personal real estate deal gone bust, that is being 'repurposed' for ANFI.
>
> 2. ANFI is vastly overvaluing Chanana's property, for Chanana's pocketbook. At $30m, Chanana will reap a payoff (at shareholders' expense) of 5.3x his cost – for land that is no longer viable for its originally intended purchase
>
> 3. Based on our benchmarking of the 80 acre property against a basket of agricultural properties for sale in the same area, ANFI is overvaluing the property by >2x. This is a conservative estimate.
>
> 4. ANFI does NOT NEED THIS LAND.

50. Defendant Chanana's compensation for his position at Amira is as PPRG states "astoundingly more than 3x the average of his peers." The industry average is $275,491 while his annual salary is $946,200. He also lent money to Amira at 11.6% interest per annum compounded on a daily basis. According to the Report, the "loan balances owed by the company as at FY12-14 amounted to USD 1.2mn on average."

51. Not only is Defendant Chanana heavily compensated, but he also uses Amira funds for his personal expense. According to the Report, Amira is paying for a house manager and chef for Defendant Chanana's farm house.

52. The related party transactions benefited the Company's CEO and his family at the expense of shareholders.

53. The related party transactions therefore support a strong inference of scienter.

54. On February 9, 2015, Amira stock closed at $9.95, falling $3.45 or almost 26% from February 6, 2015 when the stock closed at $13.40.

55. This stock drop damaged investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Amira securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the

Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

57. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Amira Class Period, securities of Amira were actively traded on the New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Amira or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

58. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

59. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and securities litigation.

60. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Amira;
- whether the Individual Defendants caused Amira to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Amira securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

62. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Amira securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Amira securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

63. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

64. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

65. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Amira's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

67. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Amira's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

68. Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Amira as specified herein.

69. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Amira's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Amira and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Amira's securities during the Class Period.

70. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Amira's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by overstatements and misstatements of the Company's financial condition throughout the Class Period, if the Defendants did not have actual knowledge of the misrepresentations and omissions alleged, they were

reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Amira's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Amira's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by the Defendants during the Class Period, Plaintiff and the other members of the Class acquired Amira common stock during the Class Period at artificially high prices, and were, or will be, damaged thereby.

72. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Amira's financial results, which was not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Amira securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

73. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Amira's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

74. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75. This Second Claim is asserted against each of the Individual Defendants.

76. The Individual Defendants acted as controlling persons of Amira within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these

statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

77. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

78. As set forth above, Amira and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

79. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

80. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## THIRD CLAIM
## Violation of Section 11 of The Securities Act
## Against All Defendants

81. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is not based on and does not sound in fraud.

82. Plaintiff purchased Amira securities pursuant to the Registration Statement and Prospectus.

83. This claim is brought by Plaintiff on his own behalf and on behalf of other members of the Class who acquired Amira shares pursuant to or traceable to the Company's Offering. Each Class Member acquired his, her, or its Units pursuant to and/or traceable to, and in reliance on, the Registration Statement and Prospectus. Amira is the issuer of the securities through the Registration Statement and Prospectus. The Individual Defendants are signatories of the Registration Statement and Prospectus.

84. All Defendants owed to the purchasers of the shares obtained through the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

85. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

86. Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the

investing public that were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, among other things, the facts set forth above. By reason of the conduct alleged herein, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

87. Amira is the issuer of the Units sold via the Registration Statement and Prospectus. As issuer of Units, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

88. At the times they obtained their shares of Amira, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements and omissions alleged herein.

89. This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement and Prospectus that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement and Prospectus.

90. By virtue of the foregoing, plaintiff and the other members of the class are entitled to damages under Section 11 as measured by the provisions of the Section 11(e), from the Defendants and each of them, jointly and severally.

**<u>FOURTH CLAIM</u>**
**Violation of Section 15 of the Securities Act**
**<u>Against the Individual Defendants</u>**

91. Plaintiffs repeat and realleges each and every allegation contained above, excluding all allegations that contain facts necessary to prove any elements not required to state a Section 15 claim, including without limitation, scienter.

92. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

93. The Individual Defendants, by virtue of their offices, directorships and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Amira within the meaning of Section 15 of the Securities Act during the relevant time period. The Individual Defendants had the power and influence and exercised the same to cause Amira to engage in the acts described herein. Each of the Individual Defendants was in a position to control and did in fact control Amira and the issuance of the false and misleading statements and omissions contained in the Registration Statement and Prospectus.

94. The Individual Defendants did not make a reasonable investigation and did not possess reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

95. This claim was brought within one year after Plaintiffs discovered or reasonably could have discovered the untrue statements and omissions in the Registration Statement that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement.

96. By virtue of the conduct alleged herein, the Individual Defendants are jointly and severally liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and (d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 18 , 2015

**GLANCY BINKOW & GOLDBERG LLP**

By: *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com
lglancy@glancylaw.com
rprongay@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
fmcconville@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I, DAVID C. SUND, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Amira Nature Foods Ltd. ("Amira" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Amira securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Amira securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Amira securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed 2-11-15
(Date)

David C. Sund
(Signature)

DAVID C. SUND
(Type or Print Name)

**AMIRA NATURE FOODS LTD (ANFI)** **Sund, David C.**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 07/23/2014 | PUR | 130 | $13.9500 |
| 09/17/2014 | PUR | 56 | $17.5400 |
| 09/24/2014 | PUR | 200 | $17.1400 |
| 09/24/2014 | PUR | 100 | $17.1300 |
| 09/25/2014 | PUR | 200 | $16.6900 |
| 09/25/2014 | PUR | 200 | $16.1400 |
| 11/03/2014 | PUR | 100 | $17.1500 |
| 11/21/2014 | PUR | 200 | $16.1900 |
| 12/15/2014 | PUR | 200 | $9.7400 |
| 12/17/2014 | PUR | 200 | $9.9300 |